# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 95-30440
(Summary Calendar)
_____

DEBORAH A. SIMS,                                        Plaintiff-Appellant,

versus

BROWN & ROOT
INDUSTRIAL SERVICES INC.,

                                                        Defendant-Appellee,

and

FRANK BROSSETTE,

                                                        Defendant.

_____

Appeal from United States District Court
for the Western District of Louisiana
(94-CV-708)
_____

January 23, 1996
Before JONES, JOLLY and STEWART, Circuit Judges.

PER CURIAM:[*]

Deborah Sims was sexually harassed by the project superintendent at her job with Brown and

Root Industrial Services ("Brown & Root"). When she reported the harassment according to the

policy in place at Brown & Root, the claim was immediately investigated, the project superintendent

was fired, and Sims's pay was reimbursed. Nevertheless, she brought suit against Brown & Root,

alleging that she should not have had to prove a failure to take prompt remedial action, and that

    [*]   Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

Brown & Root had constructive knowledge that the project superintendent involved pervasively sexually harassed women. The district court granted summary judgment for Brown & Root, and Sims appeals that decision. We AFFIRM.

**FACTS and BACKGROUND**

Sims claims that project superintendent Frank Brossett made unwelcome sexual advances even before she was hired. Within a short time after her hiring, she was made aware of the policy at Brown & Root that provided a "hot line" to Human Resources for complaints of sexual harassment. Although Brossett's continued behavior was inappropriate and unwelcome -- he propositioned her, called her mother and asked personal questions, and "banged" on her apartment door at odd hours of the night -- she did not complain until he docked her pay by $2.00 per hour for refusing to have intimate relations with him. When she complained shortly thereafter, her complaint was immediately investigated, Brossett was dismissed, and Sims's back pay was fully reimbursed. Sims brought a sexual harassment claim under federal and state law against Brown & Root, state tort law claims against Brossett, and filed a third party demand against State Farm, Brown & Root's insurer. All of the claims were dismissed on summary judgment. Sims appeals only the dismissal of Brown & Root. She claims that she should not have been required to show that Brown & Root failed to take prompt remedial action. She also contends that the district court erred in finding that Brown & Root did not have constructive knowledge that Brossett sexually harassed women.

**DISCUSSION**

A grant of summary judgment is reviewed <u>de novo</u> under the same standard as that applied by the district court. <u>Ellert v. University of Texas, at Dallas</u>, 52 F.3d 543, 545 (5th Cir. 1995). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp.</u>

2

v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265, 273 (1986). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993). With these principles in mind, we now turn first to the legal issue concerning sexual harassment law, and then to the mixed law-and-fact issue dealing with constructive knowledge.

Sims argues that she should not be required to show that Brown & Root failed to take prompt remedial action once they received actual or constructive notice of the sexual harassment. She argues that, regardless of the fact that Brown & Root took prompt remedial action, they should be held liable for Brossett's wrongful behavior on the grounds that he was a supervisor, rather than a co-worker and he controlled Sims' terms and conditions of employment. As pointed out by the district court in its memorandum opinion, the necessary implication of her argument is that Brown & Root should be held strictly liable for the wrongful behavior of its employee Brossett.

In Nash v. Electrospace System, Inc., 9 F. 3d 401, 404 (5th Cir. 1993), this court explicitly rejected strict liability for employers in sexually hostile work environment claims brought under Title VII, st ating that "[a]n employer is liable only if it knew or should have known of the employee's offensive conduct and did not take steps to repudiate that conduct and eliminate the hostile environment." The same denial of strict liability holds true in a quid pro quo sexual harassment claim because the elements of both claims are nearly identical.

The distinctions between claims of a sexually hostile environment and quid pro quo sexual harassment are outlined by this court in Jones v. Flagship International, 793 F.2d 714, 719-22 (5th Cir. 1986), cert.denied 479 U.S. 1065, 107 S. Ct. 952, 93 L.Ed. 2d 1001 (1987). The only difference between the two claims is that in a quid pro quo situation, the harassment complained of must affect tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. Jones, 793 F.2d at 722. In a sexually hostile environment, the harassment complained of must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Jones, 793 F.2d at 719-20. Otherwise the elements of both claims are the same: 1) The employee belongs to a protected group, 2) The employee was subject to unwelcome sexual

harassment, 3) The harassment complained of was based upon sex, 4) The employer knew or should have known of the harassment in question (<u>respondeat superior</u>) and failed to take prompt remedial action. <u>Jones</u>, 793 F.2d at 719-22. Thus, while <u>Nash</u> addressed only a sexually hostile environment claim, <u>Jones</u> indicates that the plaintiff is required in both situations to prove a failure to take remedial action, and thus the <u>Nash</u> holding rejecting strict liability is equally applicable to a <u>quid pro quo</u> claim.

Moreover, common sense, as discussed both in the memorandum opinion and the <u>amicus curie</u> brief, dictate that strict liability should not apply to a sexual harassment claim and a plaintiff should be required to prove that the employer failed to take prompt remedial action. If the employer were to be held strictly liable even after having taken prompt remedial action, then he would have no incentive to take such remedial action, and no incentive to create effective policies in order to prevent such abuses. Holding a company liable after it has taken prompt remedial action would "produce truly perverse incentives benefitting no one, least of all actual or potential victims of sexual harassment." <u>Carmon v. Lubrizol</u>, 17 F.3d 791, 795-96 (5th Cir., 1994). Because Sims could not show that Brown & Root failed to take prompt remedial action, the district court made no error in holding that Sims's claims against Brown & Root failed.

Sims also claimed that Brossett's prior acts tend to prove that Brown & Root knew or should have known of Brossett's behavior at a much earlier date and failed to take prompt remedial action at that point. In <u>Waltman v. International Paper Co</u>, 875 F.2d 468, 478 (5th Cir. 1989), a case similarly dealing with a supervisor's sexual harassment of an employee, this court found that the plaintiff had shown actual knowledge on the part of an employer sufficient to withstand summary judgment review because she proved that she had complained to higher management. Moreover, this court also found that she had adduced sufficient summary judgment evidence to raise a fact issue with regard to constructive knowledge: constructive knowledge was inferred where there was sexual graffitti directed at the plaintiff in numerous locations at her place of employment.

In the case at bar, despite her awareness of the policy prohibiting sexual harassment at Brown & Root, Sims did not pursue the procedure outlined by that policy until Brossett docked her pay,

4

consequently, there was no actual knowledge on the part of Brown & Root of any harassment prior to that time. With regard to constructive knowledge, Sims presented the depositions of other employees who had said that they either were themselves propositioned by Brossett or knew of others who had been. Upon reviewing this summary judgment evidence, the district court found that the only supervisors who had heard "rumors" of Brossett's conduct were low-level foremen, and there was a notable absence of evidence that a higher level supervisor or immediate supervisor had knowledge of Brossett's alleged conduct. A thorough review of the record shows no clear error in this finding of fact. On this basis, the court found "as a matter of law" that Brown & Root had not had constructive knowledge that Brossett sexually harassed female employees, and then concluded that Sims failed to raise a genuine issue of material fact whether Brown & Root had knowledge of Brossett's prior conduct and failed to take prompt remedial action at that point. We agree, and therefore AFFIRM the granting of summary judgment to appellee Brown & Root.